## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

REAGAN JAMES CALDWELL,      §
     §
     *Plaintiff,*      §
     §
v.      §      CIVIL ACTION NO. H-07-1755
     §
WILLIAM SHELBY, *et al.,*      §
     §
     *Defendants.*      §

## MEMORANDUM ORDER AND OPINION

Reagan James Caldwell, a state inmate proceeding *pro se* and *in forma pauperis*, filed this section 1983 lawsuit raising numerous civil rights and state law claims against various state prison officers. Defendants filed a motion for summary judgment (Docket Entry No. 20), to which plaintiff responded (Docket Entry No. 22).

After consideration of the pleadings, the motion and response, the probative summary judgment evidence, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons set forth below.

### BACKGROUND AND CLAIMS

Plaintiff raises claims against defendants in their official and individual capacities for loss of personal property; use of excessive force; failure to protect; false disciplinary charge; deliberate indifference to serious medical needs; verbal threats; negligence; assault; and retaliation. He seeks $250,000.00 in compensatory damages from each defendant. Defendants argue that plaintiff's claims fail as a matter of law.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must determine whether the pleadings and records indicate if there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must present evidence that shows that the non-movant cannot carry its burden of proof at trial. *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Once the movant has met this burden, the burden shifts to the non-movant to present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

**ANALYSIS**

A.    *Official Capacity Claims*

A suit against a state official in his official capacity is, in effect, a claim against the state itself.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989).  The Fifth Circuit has repeatedly held that the Eleventh Amendment bars plaintiffs from recovering monetary damages in section 1983 claims from prison officials in their official capacities. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).

To prevail in an official capacity claim, a plaintiff must show that the government entity is the moving force behind the violation.  *Id.*  To do so, he must identify a policy of the policy maker that caused the plaintiff to be subjected to a deprivation of his constitutional rights.  *Grandstaff v. City of Borger,* 767 F.2d 161, 169 (5th Cir. 1985).  At the least, the plaintiff must present specific facts showing a pattern of violations in order to prevail on a claim against a defendant in his official capacity.  *Spiller v. City of Texas City,* 130 F.3d 162, 167 (5th Cir. 1997); *Frare v. City of Arlington,* 957 F.2d 1268, 1278 (5th Cir. 1992). Plaintiff's allegations in the instant case fail to meet these pleading and proof requirements, and do not support an official capacity claim under section 1983.  Defendants are entitled to summary judgment dismissing plaintiff's official capacity claims against them.  *See City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985); *Bigford v. Taylor,* 834 F.2d 1213, 1220 (5th Cir. 1988).

B.     *Claims for Property Loss*

Plaintiff alleges that, during a routine cell search, Officers Isaias Vargas and Summer Margos destroyed his personal property, including photographs and legal documents. Generally, if a state provides adequate remedies to compensate individuals for wrongful property loss, there is no absence of due process. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Nor are intentional and negligent deprivations of property actionable under section 1983 if suitable state remedies exist. *Id*.  Plaintiff has an adequate remedy by virtue of his right to seek compensation for his property loss in Texas state courts. *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).  Because Texas has an adequate post-deprivation remedy, plaintiff has no cognizable section 1983 claim for the alleged destruction of his personal property.  His claim is dismissed.

C.     *Claim for Use of Excessive Force*

Plaintiff contends that, following the cell shakedown, Officers Vargas and Margos brought him back to his cell.  Upon seeing his "ramshackled" personal property, plaintiff became upset and demanded "rank."  Plaintiff claims that Officer Vargas then attacked him and threw him to the floor in an unprovoked use of excessive force, and that Officer Margos witnessed the assault but failed to intervene or notify her supervisor.

The record shows that plaintiff received a disciplinary conviction for assaulting Officer Margos during this incident, and that Officer Vargas's restraint of and use of force against plaintiff was in response to plaintiff's uncontrolled behavior and assault on Officer

Margos.  Neither plaintiff nor the record show that the disciplinary conviction has been reversed or otherwise set aside.  Should plaintiff prevail on this claim for use of excessive force, it would necessarily imply the invalidity of his disciplinary conviction and punishment. Consequently, his claim for monetary damages arising from the alleged use of excessive force is barred by *Edwards v. Balisok*, 517 U.S. 1166 (1997).

Regardless, the record does not support plaintiff's Eighth Amendment claim.  Plaintiff gave the following accounting of the incident in defendants' use of force report:

> Approximately 9:45 PM on 1/26/07, at J21-1-15, I was awaken[ed] by [Officers] Vargas and Margo[s] to strip down and come out the cell.  I noticed both [officers were] hostile and demanding, but I obeyed procedures and was then handcuffed and placed in [an] outside cage on 1-row.  These two officers ramshackled [sic] my cell, destroying personal pictures and legal papers thrown everywhere! Afterwards, I was handcuffed; when I arrived at [my] cell door and noticed the ramshackled [sic] of pictures and legal materials, I requested a Lt. supervisor, but [Vargas] jerked me in a 360 degrees turn, body slamming me on [my] right fractured hip at lower back with excessive use of force.

(Docket Entry No. 23, Use of Force Report, p. 18.)

The use of force report provides the following summary of the officers' statements regarding the use of force incident:

> On 1/27/07 [sic] at approximately 2130 hours, Officers [Vargas and Margos] were conducting cell searches on J21-1 row, an administrative segregation wing.  Officer Vargas placed hand restraints on [plaintiff] while he was in his cell[.]  Officer Vargas escorted [plaintiff] out of his cell and secured him into the holding cell[.]  Officers Vargas and Margos then proceeded to conduct the cell search.  Once the search was completed, Officer Vargas returned to the holding cell to escort [plaintiff] back into his cell.  Officer Vargas was escorting [plaintiff] from the holding cell to [plaintiff's cell] by [plaintiff's] left arm.  During the escort, [plaintiff] tried to jerk away from Officer Vargas'

grasp and lunge towards Officer Margos.  Officer Vargas then tightened his grasp on [plaintiff].  At that point, [plaintiff] spit on Officer Margos' right arm and shoulder.  Officer Vargas then guided [plaintiff] to the wall, implementing a minor use of force.  [Plaintiff] proceeded to jerk out of Officer Vargas' grasp and lunge towards Officer Margos again.  Officer Vargas guided [plaintiff] to the wall.  [Plaintiff] continued to resist and attempted to remove himself from Officer Vargas' grasp once again and Officer Vargas placed [plaintiff] on the floor with the minimum force necessary. Officer Vargas applied pressure to [plaintiff's] upper torso.  At this time, Officer Margos requested a supervisor, additional staff and a video camera.  Once [plaintiff] stopped resisting, Officer Vargas rolled [him] onto his right side to prevent positional asphyxia. [Plaintiff] began resisting once more.  Officer Vargas then tightened his grasp on [plaintiff]'s left arm and shoulder.  Officer Vargas ordered [plaintiff] to calm down and stop resisting,  [Plaintiff] complied. . . .  At approximately 2135, Officer Robinson, Delilah CO IV, arrived with the video camera and began recording the incident. . . . Lt. Britt asked the offender if he sustained any injuries during the use of force.  [Plaintiff] complained of hip and lower back pains.  Lt. Britt took still photos of [plaintiff], front and back, and of alleged injuries.  [Plaintiff] claimed he could not walk unassisted, therefore Lt. Britt requested a wheelchair.  [Plaintiff] was then escorted by wheelchair to J21-1-15 cell and assisted to his feet, then into his cell by Sgt. Butler and Officer Turner. . . . Medical was not on the unit, due to the time of night, therefore, a use of force physical was not conducted at that time.  [Plaintiff] was in a secure location, with the restraints removed, therefore, Lt. Britt terminated the use of force.  A use of force physical was conducted at approximately 2230 via DMS to the Estelle Unit.  Ms. Cotton RN determined that [plaintiff] had no visual signs of injuries and would be seen by medical when they arrived on the unit. Ms. Harkey RN performed the actual use of force physical on [plaintiff] and treated the offender for pain to his hip and lower back due to [plaintiff]'s claims. . . .  Note that the use of force Telex was updated due to an error in reporting the reason for using force: assaulting staff without a weapon.

(*Id*., pp. 7-9.)

In reviewing an Eighth Amendment claim brought under section 1983 for the use of

excessive force, the court considers whether force was applied in a good faith effort to

maintain or restore discipline, or maliciously and sadistically for the very purpose of causing

harm.  *Hudson v. McMillan*, 503 U.S. 1, 19 (1992).  Several factors are considered in deciding the nature of the force used against an inmate, such as (a) the extent of the injury suffered; (b) the need for the application of force; (c) the relationship between the need and the amount of force used; (d) the threat reasonably perceived by the responsible officials; and (e) any efforts made to temper the severity of the forceful response. *Id*. at 8.  An injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible; that is, the force used is objectively unreasonable under the circumstances. *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996).  Therefore, the objective reasonableness of the force depends on the facts and the circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible.  *Id.* at 434.

The record shows that neither the medical staff that examined plaintiff shortly after the use of force, nor the staff that subsequently examined him and obtained x-rays of his hip, reported signs of physical injury resulting from the use of force incident.  (Docket Entry No. 20, Exhibit D, p. 20.)  Plaintiff's medical records indicate a history of hip arthritis as well as degenerative joint disease in his lower spine.  (Docket Entry No. 20, Exhibit E, p. 3.)  During a follow-up clinical visit some twenty-two days after the incident, plaintiff told medical staff that "his hip is refractured and it happened in a use of force."  (Docket Entry No. 20, Exhibit D, p. 20.)   Plaintiff's relevant medical records, however, reflect that, "according to a radiology report of 3/1/07 [plaintiff] has mild degenerative changes in the lumbar spine, post-op and degenerative and/or arthritic changes to right hip[,] *his x-ray did not show any*

7

*fracture or dislocation*." (Docket Entry No. 20, Exhibit D, p 16, emphasis added.)  Plaintiff's

assertion that his hip was re-fractured in the use of force incident is not substantiated by

competent summary judgment evidence.

Defendants submitted an affidavit of expert witness Glenda M. Adams, M.D., who

testified in relevant part as follows:

> The Office of the Attorney General of Texas has requested that I review (1)
> [plaintiff's lawsuit], (2) his correctional medical records from June 2006
> through July 2007, (3) his Step 1 Grievance dated 01-29-2007, and (4) the
> TDCJ Use of Force Report for a 01-26-2007 incident involving Plaintiff so
> that I may render medical information and expert opinion(s) to assist the
> Court[.]
>
>          *     *     *     *
>
> Plaintiff has been diagnosed with antisocial personality disorder and is on
> multiple psychiatric medications[.] He has a long history of polysubstance
> abuse.  His medical records suggest that he engages in drug seeking behavior.
> This is evidenced by Plaintiff's (1) frequent requests and/or demands for
> antihistamines or 'cold' medications even when clinically objective findings
> of need are absent[,] and (2) Plaintiff giving a variable and medically
> inconsistent history of drug allergy – e.g. stating he is allergic to plain Tylenol
> but frequently requesting the narcotic Tylenol #3, which contains plain Tylenol
> as one of its ingredients.  The medical records document multiple instances
> where Plaintiff has become loud, verbally abusive, and threatening when
> medical personnel do not acquiesce to his demands[.] The medical records
> even document an encounter at the Skyview Unit in Rusk, Texas on 03-02-
> 2007 in which Plaintiff attempted to enlist Donna Jenkins, RN to provide false
> testimony for the events occurring . . . in this current litigation.   Hence,
> Plaintiff does not appear to be a completely reliable historian.
>
> Plaintiff has long standing and extensive arthritic right hip disease, His
> surgical scar and the presence of two pins on x-ray suggest this was caused by
> a slipped capital femoral epiphysis (slipped growth plate at the top of the
> femur) in adolescence and/or a traumatic fracture with avascular necrosis of
> the femoral head (fracture with loss of the blood supply and subsequent death

of the bone at the femoral head).  The medical records indicate Plaintiff has given a variable history of injury to his right hip in 1978, 1990, and 1998. Radiographs also indicate that Plaintiff has minimal degenerative joint disease (arthritis) of the lumbar or lower spine.  This is not an unusual finding in a 50 year old male.

While the Use of Force incident on 01-26-2007 may have temporarily aggravated Plaintiff's pre-existing condition, there is no evidence that Plaintiff 're-fractured his hip' or suffered any other major injury. . . .

The records reviewed indicate the Use of Force occurred on 01-26-2007 at about 2132 hours.  Contrary to Plaintiff's claim . . . [s]ecurity personnel did provide a wheelchair to take Plaintiff to the medical [d]epartment.

\*     \*     \*     \*

During the [Digital Medical Services] medical screening [shortly after the incident] Plaintiff was found to have no 'obvious swelling or deformity[,] was able to hold out his right leg without voicing or showing signs of discomfort and was able to stand (without assistance) for 10 minutes' during the exam. He was given an ice pack and allowed to return to his cell.  A few hours later on 1-27-2007 when medical personnel were on-site at the Ellis Unit, Plaintiff was returned to the medical department via wheelchair for further assessment by RN Shirley Harkey.  Finding nothing urgent or emergent, RN Harkey contacted the on call practitioner, Physician Assistant (PA) Kim Forsti, who ordered Tylenol #3 pain medication three times daily for four days and a follow up appointment with a practitioner (physician, physician assistant, or advanced nurse practitioner) on Monday 01-29-2007.
After the Use of Force on 01-26-2007, Plaintiff was seen by Ellis Unit medical personnel at least twice daily to deliver his medications through 02-18-2007. On that date he was noted to be walking about his cell 'with no apparent limp or guarding.' However, on 02-19-2007, Plaintiff was found standing on his bunk with a noose around his neck threatening to jump off the bunk. He stepped off the bunk and climbed back up on the bunk once before he could be convinced to untie the noose (apparently his hip and back pain did not prevent this activity).  He claimed auditory and visual hallucinations and was transferred to the Skyview Unit which is a mental health inpatient facility.

Plaintiff's report that his hip and back radiographs were completed on 03-01-2007 is true. The x-ray results were as previously noted – marked *long*

9

*standing* arthritis of the right hip and *minimal* degenerative joint disease (arthritis) of the lumbar (lower) spine.  Of note is that there was *no* evidence of a *serious recent* injury.

(Docket Entry No. 20, Affidavit of Glenda Adams, M.D., pp. 1-4, parenthetical omissions, original emphasis).

Plaintiff also fails to show that the use of force was an unnecessary response to his actions.  The use of force report submitted by the officers shows the following as a "summary as to why force was used":

> Offender attempted to pull awa[y] from escorting officer and was placed on the wall[.] The offender continued to resist and spit on the officer[.] Offender was placed on the wall again and offe[n]der once again continued to struggle[.] At this time the officers placed the offender on the floor [to] gain control of the offender.

(Docket Entry No. 23, Use of Force Report, p. 2.)   Further, the report submitted by supervising officer Lieutenant Michael Britt states that plaintiff:

> tried to jerk away from Officer Vargas'[s] grasp and lunge towards Officer Margos. Officer Vargas then tightened his grasp on the offender. At that point, [plaintiff] spit on Officer Margos' right arm and shoulder. Officer Vargas then guided the offender to the wall, implementing a minor use of force. Offender Caldwell proceeded to jerk out of Officer Vargas'[s] grasp and lunge towards Officer Margos again. Officer Vargas guided the offender to the wall. [Plaintiff] continued to resist and attempted to remove himself from Officer Vargas'[s] grasp once again and Officer Vargas placed the [plaintiff] on the floor with the minimum force necessary.

(*Id*., Use of Force Report, pp. 7-8.)

While plaintiff claims that Officer Vargas's actions constituted an excessive use of force, he fails to address how his own behavior warranted Officer Vargas's use of force to

prevent him from attacking his fellow officer.   In his complaint and various official grievances, plaintiff never denies attempting to resist Officer Vargas or lunging at Officer Margos.   Plaintiff does state that "he'd never intentionally spit" on Officer Margos, and explains that aspect of his behavior during the incident as follows:

> [O]ften times when *angry or shouting*, it may appear that 'small amounts of spittle' is [sic] exposed when [I'm] *talking or shouting*, but never its [sic] deliberately spat at anybody.

(Docket Entry No. 22, Plaintiff's Affidavit, p. 1, emphasis added.)  By his own affidavit, plaintiff shows that he was angry, talking, and/or shouting during the incident, thereby lending support to the officers's need to calm, subdue, and regain control over him during the incident.  Plaintiff fails to address the relationship between the threat perceived by the officers and the force used, or the several attempts Officer Vargas made to control plaintiff before having to guide him to the floor and use force to regain control.

Given the context in which the force was deployed, plaintiff has not shown that it was objectively unreasonable for Officer Vargas to use force and take plaintiff to the floor in order to regain control over him.   Plaintiff has not shown that the force was applied maliciously or sadistically for the very purpose of causing harm.  *See Hudson*, 503 U.S. at 19.  Plaintiff fails to show that the force used against him was excessive in violation of his Eighth Amendment rights.   Defendants are entitled to summary judgment dismissing this claim.

D.    *Claim for Failure to Protect*

Plaintiff next argues that Officer DeLeta Jones acted with deliberate indifference to his physical safety when she failed to have his housing assignment changed in response to alleged threats by other inmates.

To establish a violation of the Eight Amendment's prohibition against cruel and unusual punishment, plaintiff here must show objective exposure to a substantial risk of serious harm that Officer Jones acted or failed to act with deliberate indifference to that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under *Farmer*, a prison official acts with deliberate indifference only if the official knows that the inmate faces a substantial risk of serious bodily harm, and the official disregards that risk by failing to take reasonable measures to abate it. *Id.* at 847.

To substantiate his claim, plaintiff points to "threats and assaults against [Plaintiff] by know[n] "crip gang" affiliat[es]," and an isolated incident during which plaintiff had a watery substance thrown in his face by another inmate. (Docket Entry No. 11, p. 3.) However, plaintiff does not show that he was objectively exposed to a substantial risk of serious harm. He merely states that he was being threatened by fellow inmates whom he believed to be affiliated with a gang, and points to the isolated incident during which he had liquid thrown in his face. Further, and regardless whether or not plaintiff was objectively exposed to a significant risk, plaintiff fails to show that Officer Jones acted or failed to act with deliberate indifference to the purported risk. Plaintiff does not establish that Officer

12

Jones knew there existed a substantial risk of serious bodily harm or that Officer Jones was not acting in plaintiff's best interest in not moving him to another cell.  As to the latter factor, the record shows that plaintiff was housed in an administrative segregation wing at the Ellis Unit because of his chronic illness and physical disabilities.  (Docket Entry No. 20, Exhibit B, p. 24.)  Officer Jones declined plaintiff's request for a housing change because of the medical restriction that required plaintiff to be housed on the bottom row in a bottom bunk.  *Id*.  Further, plaintiff fails to show the requisite physical injury regarding this claim.  *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).  Defendants are entitled to summary judgment dismissing this claim.

Plaintiff also alleges that Officer Evan Arnold failed to prevent another inmate from throwing a watery substance on him (which plaintiff asserts was urine), and failed to report the incident to his supervisors. Plaintiff further alleges that Officer Arnold failed to file a disciplinary report against the offending inmate and failed to immediately take plaintiff to have the substance washed from his eyes.

To prevail on this Eighth Amendment claim, plaintiff again must show that he is incarcerated under conditions posing a substantial risk of serious bodily harm and that prison officials were deliberately indifferent to that risk.  *See Farmer*, 511 U.S. at 834.  A prison official is deliberately indifferent, for purposes of establishing an Eighth Amendment failure to protect claim, when he knows of and disregards an excessive risk to an inmate's health or safety.  *Id*.  The official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must actually have drawn that inference. *Id*. at 837.

Plaintiff does not show that Officer Arnold was aware of any substantial risk of another inmate throwing liquid in plaintiff's face.  Plaintiff does not allege that he informed Officer Arnold of a substantial risk of such action, or that he himself was aware of the impending attack.  (Docket Entry No. 1, p. 12.)  Therefore, he fails to show that Officer Arnold was aware of an excessive risk to plaintiff's health or safety, and therefore, fails to show that he was subjected to a violation of his Eight Amendment rights.  Further, plaintiff again fails to show the requisite physical injury regarding this claim.  *See Geiger*, 404 F.3d at 374.  Neither plaintiff nor his medical records reveal that the watery substance caused physical injury to plaintiff.  Defendants are entitled to summary judgment dismissing this claim.

Plaintiff argues that Officer Arnold also failed to report the incident to his supervisors and failed to file a disciplinary report against the other inmate.  His arguments fail to raise issues of constitutional dimension.  *See Geiger*, 404 F.3d at 374.  Defendants are entitled to summary judgment dismissing this claim.

  E.  *Claim for False Disciplinary Charge*

Plaintiff complains that officer Margos filed a false disciplinary report against him, reporting that plaintiff "spit on "Officer Margos's right arm and shoulder," thereby necessitating the use of force by Officer Vargas.  Plaintiff's assertion constitutes a collateral

14

attack on his disciplinary case, and is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).  Pursuant to *Heck*, a plaintiff's claim for damages is not cognizable under section 1983 if a judgment in his favor would "necessarily imply" the invalidity of his conviction or sentence, unless he can demonstrate that the sentence or conviction has previously been invalidated.  *Id*. at 487.  Specifically, a prisoner's claim for relief based on due process violations in the course of a prison disciplinary hearing that necessarily imply the invalidity of the punishment imposed is not cognizable under section 1983.  *Edwards v. Balisok*, 517 U.S. 1166 (1997).  Plaintiff has not shown that his disciplinary conviction has been invalidated.  Because he has not successfully challenged the outcome of his disciplinary hearing, the instant claims is a collateral attack on the constitutionality of his conviction. His claim for damages is not cognizable under section 1983, and defendants are entitled to summary judgment dismissing this claim.

F.       *Claims for Deliberate Indifference to Serious Medical Needs*

Plaintiff asserts that Officer Arnold was deliberately indifferent to his health concerns in failing to immediately take him to the hospital to have the urine washed from his eyes. Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm.  *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).  To establish deliberate indifference in this context, plaintiff must show that the official was subjectively aware of the risk of serious bodily harm to the inmate.  *Farmer*, 511

U.S. at 829. As the record indicates, Officer Arnold was not aware that plaintiff had a liquid thrown in his face, but was only aware of a "puddle of water on one row near the wall." (Docket Entry No. 20, Exhibit B, p. 21.) The record further shows that the medical staff "found nothing wrong with [plaintiff] but flushed his eyes with sterile water anyway." *Id*. Because plaintiff fails to show that Officer Arnold was subjectively aware that plaintiff had been subjected to a serious risk of bodily harm, he fails to establish that the officer was deliberately indifferent to his health, and his claim is without merit. Nor does plaintiff establish the requisite physical injury regarding this claim. *See Geiger*, 404 F.3d at 374. Defendants are entitled to summary judgment dismissing this claim.

Plaintiff further complains that the officers failed to obtain a wheelchair for him and forced him to walk to the unit clinic following the use of force incident. In this context prison officials violate the constitutional prohibition against cruel and unusual punishment when they demonstrate deliberate indifference to a prisoner's safety or serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). However, the record here indicates that the officers provided plaintiff a wheelchair following the use of force and on several subsequent occasions. (Docket Entry No. 20, Exhibit A, pp. 23, 33; Exhibit D, p. 18.) Even assuming plaintiff was required to ambulate to the clinic following the incident, he fails to show that this resulted in a physical injury. Nor does plaintiff establish that the officers were aware of a serious risk of injury relating to his need for a wheelchair, or that their purported denial of a wheelchair amounted

to an unnecessary and wanton infliction of pain.   Defendants are entitled to summary judgment dismissing this claim.

Plaintiff argues that Mary Adams, a nurse manager, failed to train and supervise clinic staff regarding the proper administration of and access to his medications.   To establish section 1983 liability against this supervisor, plaintiff must show  that (1) Mary Adams failed to supervise or train her subordinates; (2) a causal connection existed between the failure to supervise or train and the violation of plaintiff's rights; and that (3) the failure to supervise or train amounted to deliberate indifference to plaintiff's constitutional rights.   *Roberts v. City of Shreveport*, 397 F.3d 287, 929 (5th Cir. 2005).   In his complaint and subsequent filings  plaintiff does not establish that Mary Adams failed to supervise or train her subordinates.   Plaintiff argues that Adams's nurses failed to provide him with care for colds, flu shots chronic illness, and the lay-ins for medical doctors examinations.   However, plaintiff's argument fails as he does not establish that the alleged insufficient treatment provided by Adams's subordinates resulted from a failure to train or supervise. Consequently, plaintiff fails to meet his burden of proof and defendants are entitled to summary judgment dismissing this claim.

Plaintiff next asserts that medication aide Chandra Nelms (1) inappropriately disclosed his medical information when she allowed a security staff officer to hand him his medications, (2) improperly and untimely distributed his medication, and (3) threatened to poison him.   Neither plaintiff nor the record shows that Officer Paul Hill administered

medication to him.  According to the response given to plaintiff's grievance against Officer

Hill and Nelms, "Sgt. Hill did not administer medications to [the plaintiff] and Ms. Nelms

did administer [plaintiff's] medications on 1-10-2007."   (Docket Entry No. 1, p. 6.)

Furthermore, Glenda Adams, M.D., testified in her affidavit that,

> There are no rules or laws disallowing properly supervised security personnel
> from giving medication to a prisoner – particularly if there is an emergency or
> other extenuating circumstance.  Plaintiff's medical records document that he
> has made threats to harm medical personnel on multiple occasions. The records
> also document that Plaintiff has expressed his belief that Ms. Nelms intended
> to poison him.  If Ms. Nelms felt threatened by Plaintiff or felt Plaintiff might
> feel safer and be more compliant with his medication if given by a security
> officer, it is certainly acceptable for her to have a security officer pass the pills
> to Plaintiff under her direct observation. Further, if Ms. Nelms did not identify
> the pills or the conditions being treated, there was no breach of medical
> confidentiality.

(Docket Entry No. 20, Affidavit of Gloria Adams, M.D., p. 5.)  Plaintiff fails to substantiate

his claims regarding his medications, and defendants are entitled to summary judgment

dismissing this claim.

Plaintiff also fails to establish the factual basis of his claim alleging failure to

administer his medications.  Plaintiff's medical records show that plaintiff repeatedly refused

his medications, claiming that Nelms had threatened to poison him, in that "Ms. Nelms has

not denied [plaintiff his] medication.  [Plaintiff] refuse[s] to take it from her." (Docket Entry

No. 20, Exhibit B, p. 30; Exhibit D, pp. 2, 4-5, 11, 26-31.)  The record fails to support

plaintiff's allegation that Nelms wrongfully withheld medication from him.  Even assuming

that Nelms may have failed to administer one or more medications or administered them in

an untimely manner, plaintiff presents no probative evidence that it resulted in a physical injury.  Plaintiff claims that Brenda Hough, a nurse practitioner, denied him access to a medical practitioner qualified to address his medical problems.  His assertion boils down to a disagreement with the diagnosis and treatment plan prescribed by Hough.  A disagreement between an inmate and a prison medical provider concerning the appropriateness of certain medical care does not rise to the level of a cognizable section 1983 cause of action.  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991).  Regardless, Glenda Adams, M.D., testified in her affidavit that,

> Plaintiff's contention that Ms. Hough and Ms. Ray denied him access to a 'medical practitioner qualified to address severe headaches, right hip pains, lower back pains, and back brace re-fitting' shows a lack of understanding on Plaintiff's part of Ms. Hough's training and skills.  As an Advanced Practice Nurse, Ms. Hough is certainly qualified to address these issues herself or make the determination that a higher level of care is needed.

(Docket Entry No. 20, Affidavit of Glenda Adams, M.D., p. 5.)  The instant claim is not cognizable under section 1983 and defendants are entitled to summary judgment dismissing this issue.

Plaintiff also claim that Victoria Ray, a licensed vocational nurse, denied plaintiff access to an annual flu shot, over the counter cold medications, and care for his hip and back.  In complaining that Ray refused his requests for over the counter medications, plaintiff again simply disagrees with prison medical providers regarding the appropriateness of his medical care.  His claim does not rise to the level of a cognizable section 1983 claim.  *See Varnado*, 920 F.2d at 321.  Nor does plaintiff show that he suffered any physical injury by not

receiving his flu shot or cold medications.  According to the affidavit testimony of Glenda

Adams, M.D.,

> Plaintiff has not been 'deprived' of necessary medications.  His overuse/abuse
> of antihistamines and 'cold' medications should be discouraged and if there is
> no objective evidence of a need for 'cold' medications, they should not be
> prescribed.  Plaintiff has at times failed to receive his medications, but such
> failures were because he refused his pills or would not comply with rules
> designed to protect personnel distributing the medication – e.g., he refused to
> turn on his cell light or placed blankets so that he could not be adequately
> visualized or refused to relinquish a razor blade in his hand[.] There is no
> documentation that Plaintiff received a flu shot in 2007 but clerical error is the
> most likely explanation.  The flu shot was ordered on 03-01-2007 at the
> Skyview Unit to be given when Plaintiff returned to the Ellis Unit.  However,
> the order was not transcribed to Plaintiff's medication print pass.  Thus, when
> Plaintiff returned to the Ellis Unit, the order for the flu shot was missed.  Of
> note, however, is that (1) there is no evidence to suggest that the omission was
> intentional, and (2) Plaintiff suffered no harm in that he did not catch flu.

(Docket Entry No. 20, Affidavit of Glenda Adams, M.D., p. 5.)

Nor does plaintiff present probative evidence to support his assertion that Ray failed

to provide "hip and back care."   To establish deliberate indifference in the context of

inadequate medical care, plaintiff must show that Ray was aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and that the official

did, in fact, make that inference.  *Farmer*, 511 U.S. at 837.  Plaintiff must also produce

evidence of acts or omissions sufficiently harmful to show such deliberate indifference.

*Wilson*, 501 U.S. at 297.  Plaintiff fails to show that Ray was deliberately indifferent to his

serious medical need for "hip and back care."  Defendants are entitled to summary judgment

dismissing this issue.

Plaintiff next alleges that Kerri Paradyz, a licensed vocational nurse, ignored his requests for medical care at undisclosed times and denied plaintiff access to a flu shot. As shown by the affidavit testimony of Glenda Adams, M.D., plaintiff did not receive his flu shot because of administrative error following his transfer to another unit. (Docket Entry No. 20, Affidavit of Glenda Adams, M.D., p. 5.)  Plaintiff presents no probative summary judgment evidence of deliberate indifference, or that he suffered a cognizable injury as a result of not receiving the flu shot.  Defendants are entitled to summary judgment dismissing this claim.

Lastly, plaintiff alleges that William Shelby, a Skyview Mental Health Facility medical provider, was deliberately indifferent to his serious medical needs by delaying his hip x-ray and in discontinuing his Tylenol #3 pain medication two days early.  He further complains that he was not  immediately examined and x-rayed by medical staff.  Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm.  *Mendoza*, 989 F.2d at 195.  To establish deliberate indifference in this context, plaintiff must show that the official was subjectively aware of the risk of serious bodily harm to the inmate.  *Farmer*, 511 U.S. at 829.  However, the record indicates that, shortly after the use of force incident, registered nurse Mary Cotton examined plaintiff and found "no obvious swelling or deformity, [plaintiff] able to hold out [right] leg [without] voicing or [signs of] discomfort while doing so - [plaintiff] stood [for] 10 minutes balancing [right] leg . . . no visible distress or discomfort at discharge back to

cell." (Docket Entry No. 20, Exhibit D, p. 18.)   In her affidavit, Glenda Adams, M.D.,

testified that,

> On Monday 01-29-2007 at 0948 hours PA William Shelby saw Plaintiff cell
> side.  PA Shelby noted that Plaintiff had no trouble when sitting or rising from
> his bunk to stand but Plaintiff refused to [put] weight on his right leg.  There
> was no point tenderness or obvious swelling of Plaintiff's right hip and no
> obvious leg length difference or abnormal rotation of Plaintiff's right leg to
> suggest a hip fracture.  PA Shelby continued the Tylenol #3 pain medication
> and ordered an x-ray to rule out an occult pelvic or hip injury.  On 01-31-2007
> PA Shelby ordered the anti-inflammatory pain medication Naproxen twice
> daily for fourteen days for Plaintiff.  Hence, Plaintiff's claim that PA Shelby
> did not examine him or order an x-ray are false.  Contrary to Plaintiff's
> opinion, there was no requirement or medical necessity to have an x-ray taken
> within 24 hours[.]

(Docket Entry No. 20, Affidavit of Glenda Adams, p. 4.)

To the extent that plaintiff argues that Shelby wrongfully discontinued his prescription

medication, his claim amounts to a disagreement with medical personnel regarding the

appropriateness of the treatment rendered.  A disagreement between an inmate and a prison

medical provider concerning the appropriateness of certain medical care does not rise to the

level of a cognizable section 1983 cause of action.  *Varnado*, 920 F.2d at 321.  Further,

Glenda Adams, M.D., testified in her affidavit that "PA Shelby's discontinuation of

Plaintiff's Tylenol #3 was well within current standards of care."  (Docket Entry No. 20,

Affidavit of Glenda Adams, M.D., p. 4.)  Plaintiff presents no probative evidence of

deliberate indifference, and defendants are entitled to summary judgment dismissing these

claims.

G.    *Claims for Verbal Threats and Retaliation*

Plaintiff argues that Kerri Paradyz, a licensed vocational nurse, used racial slurs and retaliated against him for grievances he filed regarding Paradyz's refusal to provide him a flu shot.  Claims of retaliation must be "regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  To state a claim of retaliation, an inmate must allege the violation of a specific constitutional right and establish that, but for the retaliatory motive, the complained of incident would not have occurred.  *Id*.  The inmate must produce direct evidence of motivation or present evidence of a series of events from which retaliation may be inferred.  *Id*.  Plaintiff fails to show that any action taken by Paradyz violated a constitutional right and would not have happened but for some retaliatory motive. Defendants are entitled to summary judgment dismissal of plaintiff's retaliation claim.

Plaintiff's claim that Paradyz used racial slurs is also unavailing. The Fifth Circuit recognizes that, in an Eighth Amendment context, mere threatening language and gestures, even if true, do not amount to constitutional violations.  *Robertson v. Plano City of Texas*, 70 F.3d 21, 24 (5th Cir. 1995).  Because  plaintiff alleges only verbal harassment by Paradyz, his complaint does not rise to the level of a constitutional claim, and is therefore dismissed.

## STATE LAW CLAIMS

Plaintiff asserts state law claims for negligence and assault under this Court's supplemental jurisdiction.  28 U.S.C. § 1367.  Under 28 U.S.C. § 1367(c)(3), a federal court

may decline to exercise supplemental jurisdiction over state law claims where the district court has dismissed all claims over which it has original jurisdiction.  Because plaintiff's federal claims are dismissed, this Court declines to exercise jurisdiction over whatever state law claims plaintiff might have.  Accordingly, plaintiff's state law claims are DISMISSED without prejudice.

## CONCLUSION

For the reasons stated above, the Court GRANTS the motion for summary judgment (Docket Entry No. 20) and DISMISSES plaintiff's federal claims with prejudice.  Plaintiff's state law claims are DISMISSED without prejudice.  Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas on August 1, 2008.

Gray H. Miller
United States District Judge

24